IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division
Civil Action No.: 3:25-cv-00670

JASMINE M. PEAY, )
)
   Plaintiff, )
) **COMPLAINT**
vs. )
) **JURY TRIAL DEMANDED**
NAVY FEDERAL CREDIT UNION, )
)
   Defendant. )

## **COMPLAINT**

Plaintiff Jasmine M. Peay brings this Complaint against Navy Federal Credit Union ("NFCU" or "Defendant") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*.; Breach of Contract; Conversion; Negligence; and North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1 *et seq*.—all arising out of NFCU's (1) failure to investigate several unauthorized transactions from Plaintiff's checking account with NFCU; (2) return the unauthorized funds; and (3) provide sufficient explanation of its investigative findings, all in violation of the EFTA.

## **THE PARTIES**

1. Plaintiff Jasmine M. Peay ("Ms. Peay" or "Plaintiff") is a natural person who resides in Belmont, North Carolina 28012 in the County of Gaston, and is a "consumer" as that term is defined in 15 U.S.C. § 1693a(6).

2. At all times relevant, Plaintiff's account was used for personal, family, or household purposes and constitutes an "account" as defined by 15 U.S.C. § 1693a(2).

3. Defendant Navy Federal Credit Union ("NFCU") is a national credit union that operates several lines of business relating to banking and lending, including credit cards and retail banking services. NFCU is a "financial institution" as defined in 15 U.S.C § 1693a(9). NFCU is a national bank regularly engaged in the business of "electronic fund transfers" between consumer accounts as defined in 15 U.S.C. § 1693a(7).

## JURISDICTION

4. The Court has federal question jurisdiction conferred by 28 U.S.C. 1331 and 15 U.S.C. § 1693m(g), which allows claims under the EFTA to be brought in any appropriate court of competent jurisdiction.

5. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) since a material portion of the events or omissions giving rise to the claim occurred in this District, and NFCU regularly conducts business here.

## FACTS

7. Ms. Peay has been an NFCU member for over seven (7) years. She qualified for membership through her father, who has been in the United States Army since 1999 and is currently still serving as a Sargent First Class E7. He father opened this account for her when she was fourteen years old.

8. Ms. Peay currently lives with her infant child and boyfriend along with her mother and siblings and works in healthcare as a liaison connecting individuals with community resources in their area including housing, shelter, food, transportation, etc.

Page **2** of **13**
Case 3:25-cv-00670-FDW-SCR     Document 1     Filed 09/04/25     Page 2 of 13

9. On June 13, 2025, Ms. Peay was subjected to a scam. She received a phone call during her lunch breach at work from a contact saved in her phone as "Navy Federal." She saved this contact in 2017 as a number for NFCU. Ms. Peay answered the call and believed she was speaking with an NFCU representative. She even "googled" the number to make sure it was associated with NFCU and it was. The alleged NFCU representative notified Ms. Peay of suspected fraud on her account in the amount of $3,000.00. Ms. Peay denied authorizing these transactions. The alleged NFCU representative then assisted Ms. Peay with setting up a new NFCU account.

10. Upon information and belief, the fraudster that Ms. Peay was tricked into communicating with obtained her account information and was able to gain access to her account online, and authorize three (3) transactions ($500, $500, and $2,000) totaling $3,000.00 out of her Checking Account and into the fraudster's possession.

11. On the same day of these unauthorized transactions, Ms. Peay called NFCU, on the same number she just speaking with the alleged representative on, and asked about her recent fraud claim and communication from NFCU. The true NFCU representative researched the account notes and stated there was no information or communication from their department and no record a recent phone call. Ms. Peay provided NFCU with the phone number the fraudster had used and NFCU confirmed it was associated with the bank. However, the NFCU representative explained to Ms. Peay that she was most likely a victim of "spoofing" and explained that this was the process of mimicking an organization's number and using it to impersonate as if coming from that organization. Ms. Peay, distraught and panicked, submitted her dispute and fraud claim with this legitimate NFCU representative. The representative assisted her with creating a new account, changing her credentials, and unlinking her cash apps.

Page 3 of 13
Case 3:25-cv-00670-FDW-SCR     Document 1     Filed 09/04/25     Page 3 of 13

12. Later that day, Ms. Peay contacted her local police department and filed a police report regarding this fraud.

13. On June 13, 2025, later that day, NFCU provided Ms. Peay with a provisional credit for the unauthorized funds.

14. On July 6, 2025, Ms. Peay discovered that this provisional credit was reversed and removed from her Checking Account. Ms. Peay contacted NFCU and was told that there was no error that occurred in her fraud claim because she did authorize these transactions and denied her claim.

15. Ms. Peay contacted NFCU again requesting an appeal or second review. The representative informed her that second reviews are granted if additional information is provided. Ms. Peay explained that she had obtained a police report. The representative provided Ms. Peay with a questionnaire to complete and instructions on how to upload her police report. Ms. Peay followed those instructions and submitted that information.

16. As of the date of this filing, Ms. Peay has not yet received a determination on her appeal or the documents and information relied upon by NFCU in making its determination.

17. After spending dozens of hours on the phone with NFCU to dispute these unauthorized transactions, and filing a police report, Ms. Peay had exhausted her efforts, and growing further impatient and frustrated, she contacted undersigned counsel to assist her with this matter.

18. Ms. Peay works as a healthcare community liaison earning $16/hr. She is a young mother, taking care of an infant. She currently lives with her family but has been trying to save for her own apartment. The $3,000.00 taken in unauthorized transactions represents over a month's worth of income. Being without these funds has caused her to have difficulty paying her bills and

she has incurred credit card debt due to being without these funds. Ms. Peay uses her account for paying rent, paying credit card bills, utilities, and day-to-day living expenses for her and her baby. Ms. Peay has been forced to borrow money from family.

19. As a direct and proximate result of NFCU's acts and omissions, Ms. Peay has suffered financial and emotional harm, including loss of sleep, depression, anxiety, stress, frustration, aggravation, inconvenience, and distress.

20. To date, NFCU has refused to refund Ms. Peay for these three (3) unauthorized transactions totaling $3,000.00.

21. To date, NFCU has failed to provide Ms. Peay with the documents relied upon in making its determination, despite Ms. Peay's requests.

## CLAIMS FOR RELIEF
### COUNT I
### Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*

22. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

23. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, NFCU bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

24. The primary objective of the EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

25. NFCU is a financial institution. 12 C.F.R. § 1005.2(i).

26. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." Id. § 1693f(f).

27. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering,

instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1).

28. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

29. A consumer's liability for an unauthorized transfer (or a series of related unauthorized transfers, 12 C.F.R. § 1005.6(b)), may not exceed $50. 15 U.S.C. § 1693g. However, this cap is increased to $500 where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. § 1693g(a)(2).

30. Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.").

31. Under the EFTA, consumers who are tricked into providing account access by a scammer posing as a bank employee are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under § 1693a(12). See, e.g., Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.").

32. Thus, NFCU's failure to reimburse Ms. Peay is patently unlawful and in violation of Section § 1693g.

33. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. *See* 15 U.S.C. § 1593g(b).

34. NFCU cannot meet its burden of proof here, where Ms. Peay:

   a. Promptly disputed the transaction;

   b. Provided details regarding the phone call with fraudster;

   c. Has no criminal history;

   d. Has no history of filing false disputes; and

   e. The transaction is inconsistent with Ms. Peay's pattern of use.

35. NFCU has violated 15 U.S.C. § 1693f of the EFTA, which governs resolutions of errors such as the one set forth herein.

36. Specifically, NFCU failed to investigate in good faith and failed to establish a reasonable basis for believing that Ms. Peay's account was not in error, and also constitutes a knowing and willful conclusion that Ms. Peay's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Ms. Peay to treble damages in addition to all other relief sought herein.

37. NFCU also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Ms. Peay's claim. 15 U.S.C. § 1693f(d). See CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

38. As set forth above, NFCU was notified timely.

39. NFCU violated the EFTA by holding Ms. Peay liable for more than $50 of the unauthorized transfer. 15 U.S.C. § 1693g; § 1693m(a).

40. NFCU violated the EFTA by failing to provide sufficient explanation of its findings for denying her disputes and failing to provide Ms. Peay, after her requests, the documents it relied upon in making its determination that these transactions were authorized. 15 U.S.C. § 1693f(d).

41. NFCU did not make a good faith investigation of the unauthorized transfers and did not have a reasonable basis for believing that Ms. Peay's account was not in error.

42. Accordingly, Ms. Peay is entitled, inter alia, to treble damages pursuant to 1693f(e).

43. As a direct and proximate result of NFCU's acts and omissions, Ms. Peay has suffered actual damages, including but not limited to being without the use of her $3,000.00, causing her financial strain and burden, past and future monetary loss, past and future mental distress, emotional anguish, stress, frustration, and other damages that will be presented at trial.

44. As a direct and proximate result of NFCU's violations of the EFTA, Ms. Peay is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs, and reasonable attorney's fees. *See* 1693f, 1693g, and 1693m.

## COUNT II
### Breach of Contract

45. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

46. Ms. Peay's account with NFCU is subject to NFCU's written Important Disclosures (hereafter, "NFCU's Disclosures").

47. The NFCU Disclosures state in relevant part that

"[i]f you tell us within two (2) business days after you discover your password or other means to access your account has been lost or stolen, your liability is no more than $50.00 should someone access your account without your permission. If you do not tell us within two (2) business days after you discover such loss or theft, and we can prove that we could have prevented the unauthorized use of your password or other means to access your account if you had told us, you could be liable for as much as $500.00."

NFCU Disclosures, p. 14.

48. The NFCU Disclosures state in relevant part that

"Also, if your statement shows transfers that you did not make or authorize, tell us AT ONCE. If you do not tell us within sixty (60) days after the statement was delivered to you of any unauthorize use of your account, you may not get back any of the money you lost after the sixty (60) days if we can prove that we could have stopped someone from taking the money if you had told us in time."

NFCU Disclosures, p. 14.

49. Ms. Peay did notify NFCU within two business days of this unauthorized transaction.

50. However, NFCU did not limit Ms. Peay's liability to only $50.

51. This breach has caused Ms. Peay actual damages including but not limited to her taken $3,000.00 and non-economic damages suffered.

52. NFCU is therefore liable for Ms. Peay's losses and damages, as a matter of contract regardless of its liability under any other theory, cause of action, or statute.

53. Also, as a result of these breaches of contract, NFCU is liable for costs and interest.

## COUNT III
### Negligence (*in the alternative*)

54. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

55. In the alternative, NFCU negligently, carelessly, wantonly, and recklessly maintained Ms. Peay's account in that it:

a. Failed to investigate the fraudulent activity and unauthorized transactions brought to its attention by Ms. Peay;

b. Failed to protect Ms. Peay's account from fraudulent activity by permitting fraudsters to access her account without proper verification;

c. Failed to credit the account with appropriate deposits/adjustments as it stated it would do;

d. Failed to act or perform in a professional manner expected of as a reasonable financial institution would; and

e. Was otherwise careless, negligent and grossly negligent, as will be shown at trial.

56. NFCU's conduct set forth above constitutes negligence *per se*.

57. The acts and omissions of NFCU were a direct and proximate cause of the loss of funds by Ms. Peay and caused her injury including, but not limited to the loss of her $3,000.00, and emotional distress.

58. As a direct and proximate result of the willful and wanton conduct of NFCU, Ms. Peay is entitled to recover punitive damages in an amount to be determined at trial.

### COUNT IV
### Unfair and Deceptive Trade Practices Act

59. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

60. At all times relevant, NFCU's actions, practices, and conduct was engaged in and affecting commerce in the state of North Carolina under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1 et seq.

61. NFCU violated the UDTPA by utilizing unfair, coercive, false, deceptive, unfair and misleading practices, actions, and representations in connection with the fraudulent activity and unauthorized transaction.

62. NFCU's complete failure to investigate, remedy, and correct their mistakes with respect to the the unauthorized transaction was wholly unfair, coercive, and deceptive.

63. NFCU's actions as described hereinabove are knowing and willful, offend established public policy, unethical, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead. This was demonstrated by their continued refusal to investigate, remedy, or correct their mistakes, and to comport their behavior to applicable North Carolina law. NFCU refused to consider Ms. Peay's police report and failed to provide any explanation or documentation to support its determination that these transactions were in fact authorized. The actions, pattern of conduct, and methods employed by NFCU was, in addition, patently unfair when judged against its profit-incentivized motive, intention, and the extremely negative effects that their actions and conduct have upon the average ordinary North Carolina citizens and consumers, including the Plaintiff.

64. The unfair, misleading, and deceptive actions and conduct of NFCU, as set forth herein, proximately caused economic injury to Ms. Peay, is in and effecting commerce and has the capacity to deceive ordinary North Carolina consumers.

65. NFCU's actions and pattern of conduct, constitute unfair and deceptive acts or practices pursuant to Chapter 75 of the North Carolina General Statutes. Those actions as detailed herein, offend established public policy, are unfair, unethical, oppressive, and/or substantially injurious to North Carolina consumers and include, but are not limited to the following:

   a. Failing to return the unauthorized funds withdrawn;

b. Failing to investigate, correct, or remedy their mistakes with respect to the unauthorized transactions;

c. Ignoring or refusing available evidence that contradicts its investigation and determination;

d. Failing to act as a reasonably prudent financial institution, creditor, and other business entity would under the same or similar circumstances; and,

e. Engaging in fraudulent, misleading, and/or deceptive actions and conduct.

66. NFCU's conduct proximately caused injury to Ms. Peay in that she suffered financial loss, anxiety, frustration, anger, annoyance, and emotional distress.

67. As a direct and proximate result of NFCU's unfair and/or deceptive acts and practices, in or affecting commerce, Ms. Peay is entitled to recover treble damages from NFCU, pursuant to N.C.G.S. § 75-16, and to recover her reasonable attorneys' fees and costs as provided for in N.C.G.S. § 75-16.1.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in her favor and damages against Defendant:

a) Determining that Defendant negligently and/or willfully violated the EFTA;

b) Awarding Plaintiff actual, statutory, and treble damages as provided by the EFTA and NCUDTPA;

c) Awarding Plaintiff her actual damages and costs for breach of contract, or in the alternative, for negligence;

d) Awarding Plaintiff reasonable attorney's fees and costs as provided by the EFTA and NCUDTPA;

e) Award Plaintiff punitive damages; and

f) Granting such other and further relief, including equitable and declarator relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues triable by jury.

Dated: September 4, 2025.

*/s/ Ian E. Vance*
Ian E. Vance
N.C. State Bar No. 60056
**MAGINNIS HOWARD**
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel: 919-526-0450
Fax: 919-882-8763
ivance@carolinalaw.com

*ATTORNEY FOR PLAINTIFF*